**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Justin Lowell McLemore, | No. CV-12-02288-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Todd  Johnson, et al., | |
| Defendants. | |

Pending before the Court are Defendants' Motion for Summary Judgment (Doc. 29) and Motion for Summary Disposition of their Motion for Summary Judgment (Doc. 31). The Court now rules on the motions.[1]

**I.     Background[2]**

Plaintiff is a former deputy sheriff with the Maricopa County Sheriff's Office. (Doc. 30-1 at 2). In 2009, Plaintiff was involved in a domestic dispute with his girlfriend when he pointed a gun at his head and said that he wanted to commit "suicide by cop." (*Id.* at 58). During the ensuing confrontation with police, Plaintiff refused to obey instructions and attempted to simulate having a gun behind his back by extending his finger and thumb. (*Id.* at 62). After police lit up Plaintiff with the laser sight of a Taser,

---

[1] Although Defendants requested oral argument on their motion for summary judgment, the Court will not set oral argument because it would not aid the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

[2] Because Plaintiff did not file a controverting statement of facts, the Court treats the facts as undisputed. *See* Fed. R. Civ. P. 56(e)(2).

1    Plaintiff cooperated and was arrested. (*Id.*) Plaintiff was charged with three counts of

2    disorderly conduct and one count of criminal damage. (*Id.* at 68). Plaintiff subsequently

3    resigned his position as deputy sheriff. (*Id.* at 22).

4         Plaintiff's troubles resumed on June 10, 2010. (Doc. 30-2 at 3). That evening, he

5    was drinking with friends at his mother's house when an argument erupted between

6    Plaintiff, his mother, and his stepfather. (*Id.* at 3-4). Plaintiff grabbed a knife, held it to

7    his throat, and threatened to kill himself. Plaintiff's mother grabbed a knife, held it to her

8    throat, and threatened to kill herself. Plaintiff and his mother each reached for the other's

9    knife; Plaintiff's stepfather reached for both knives. When the melee ended, all three had

10   lacerated hands. (*Id.* at 4).

11        Plaintiff left the house, and Plaintiff's stepfather called 911. (*Id.* at 2). City of

12   Mesa police officers were dispatched to a report of a suicide threat with a knife. (*Id.* at 3).

13   Plaintiff's mother told the Mesa police that Plaintiff had lost his job with the Maricopa

14   County Sheriff's Office because of the 2009 incident in which he held a gun to his head.

15   She also told the police how in that incident Plaintiff had attempted to simulate

16   possession of a gun with his hands so as to cause the officers to shoot him. Mesa police

17   found an empty gun holster underneath Plaintiff's bed; they reported him to the National

18   Crime Information Center database as a missing adult with suicidal tendencies who was

19   possibly armed. (Doc. 30-2 at 3-5).

20        Plaintiff cleaned up his hand to the extent that it no longer dripped blood, (Doc.

21   30-1 at 84), and walked over to the Hyatt hotel in Gilbert to hang out in the pool, (*id.* at

22   82, 84). He was wearing shorts, a t-shirt, and flip-flops. (*Id.* at 82). Meanwhile, the

23   Gilbert Police Department was dispatched to the hotel for a male subject who had made

24   suicidal threats earlier in the evening. Gilbert police were advised that the subject had

25   been involved in an altercation with his parents involving a knife, the subject was injured,

26   an empty gun holster had been found at the subject's residence, the subject had

27   previously attempted "suicide by cop," the subject was considered dangerous, the subject

28   was a former law enforcement officer, and the subject had been listed in the National

1    Crime Information Center database as a missing adult with suicidal tendencies. (*Id.* at
2    10).

3         Gilbert police saw Plaintiff walking around the Hyatt's pool area. (Doc. 30-2 at
4    18). Plaintiff saw police vehicles driving around and believed they were looking for him.
5    (Doc. 30-1 at 82). He hid in the bushes until most of the vehicles had left. (*Id.* at 85, 86).
6    Some time later, Officers Johnson and Fisher were standing in full police uniform near
7    two vehicles when another officer advised them over the radio that Plaintiff was walking
8    towards them. (Doc. 30-2 at 10, 13). Although it was dark and the area was not well-lit,
9    (Doc. 30-1 at 87), Officers Johnson and Fisher turned around and saw Plaintiff, matching
10   the subject's description, walking towards them, (Doc. 30-2 at 10, 13).

11        When Plaintiff stepped into the street at a distance of about fifty feet from the
12   officers, Officer Johnson instructed Plaintiff to sit on the curb. (*Id.* at 10, 13). Plaintiff did
13   not comply. Specifically, Plaintiff shouted, "F*** you, this is f******* ridiculous." (*Id.*
14   at 11). Officer Johnson drew his X26 Taser at roughly the same time as Plaintiff's
15   commentary and pointed the Taser in Plaintiff's direction. (*Id.* at 11, 14). Plaintiff
16   continued walking towards the officers despite hearing Officer Johnson's commands.
17   (Doc. 30-1 at 89; Doc. 30-2 at 11). Officer Johnson told Plaintiff to sit down on the curb
18   or be tased. (*Id.* at 14).

19        Plaintiff walked between two vehicles that were parallel parked on the street, a
20   space of a few feet. (*Id.* at 14). This caused Officer Fisher to lose sight of Plaintiff's
21   hands, and Officer Fisher ran around one of the vehicles to "cut him off." (*Id.* at 11).
22   Officer Fisher and Officer Johnson both ordered Plaintiff to get on the ground, but
23   Plaintiff stopped in the space between the vehicles and placed his hands on the back of
24   one vehicle's trunk. (*Id.* at 11, 14). Plaintiff was seven to ten feet away from Officer
25   Johnson, who again told Plaintiff to sit down on the curb or be tased. (*Id.* at 14). Plaintiff
26   did not comply, and Officer Johnson fired his Taser, striking Plaintiff in the chest and
27   enabling Officer Fisher to handcuff Plaintiff. (*Id.*) Plaintiff then shouted several times
28   that he was going to sue for excessive force. (*Id.* at 11).

1    Plaintiff was not injured during the arrest. (Doc. 30-1 at 88). Plaintiff equivocated
2    when asked by on-scene firefighters if he wanted to hurt himself, and was transported to
3    the hospital where he received stitches in his thumb. (*Id.* at 87-88). Plaintiff was
4    subsequently convicted of interfering with a police officer in the discharge of official
5    duties. (Doc. 30-2 at 29-30).

6    **II.    Motion for Summary Disposition**

7    Plaintiff did not respond to Defendants' motion for summary judgment.
8    Defendants have moved for summary disposition of their motion for summary judgment,
9    asking the Court to deem Plaintiff's failure to respond as consent to granting the motion.
10   (Doc. 31). Although permitted under Local Rule 7.2(i), the Ninth Circuit Court of
11   Appeals ("Court of Appeals") has held that Federal Rule of Civil Procedure 56 forbids
12   such a practice with respect to motions for summary judgment. *See Heinemann v.*
13   *Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013). Consequently, the Court will deny
14   Defendants' motion for summary disposition.

15   **III.   Motion for Summary Judgment**

16   **A.    Summary Judgment Standard**

17   Summary judgment is appropriate when "the movant shows that there is no
18   genuine dispute as to any material fact and the movant is entitled to judgment as a matter
19   of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely
20   disputed must support that assertion by . . . citing to particular parts of materials in the
21   record, including depositions, documents, electronically stored information, affidavits, or
22   declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by
23   "showing that materials cited do not establish the absence or presence of a genuine
24   dispute, or that an adverse party cannot produce admissible evidence to support the fact."
25   *Id.* 56(c)(1)(A), (B). Thus, summary judgment is mandated "against a party who fails to
26   make a showing sufficient to establish the existence of an element essential to that party's
27   case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.*
28   *Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine* issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

## B.     42 U.S.C. § 1983

Plaintiff claims against Officer Fisher, Officer Johnson, Gilbert Police Chief Timothy Dorn, and the Town of Gilbert for liability pursuant to 42 U.S.C. § 1983. (Doc. 1-1 at 7). For the reasons that follow, Defendants are entitled to judgment as a matter of law on all of Plaintiff's claims.

### 1.     Qualified Immunity Standard

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This protection "applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004)). There is a two-step test for resolving a qualified immunity claim: the "constitutional inquiry" and the "qualified

immunity inquiry." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The "constitutional inquiry" asks whether, when taken in the light most favorable to the non-moving party, the facts alleged show that the official's conduct violated a constitutional right. *Id.* If so, a court turns to the "qualified immunity inquiry" and asks if the right was clearly established at the relevant time. *Id.* at 201-02. This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 201.

Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. A dispositive inquiry in the qualified immunity analysis "is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

### 2.    Officer Johnson

Plaintiff claims against Officer Johnson for section 1983 liability stemming from Officer Johnson's alleged violation of Plaintiff's constitutional rights, namely by use of excessive force in arresting Plaintiff. (Doc. 1-1 at 7). In this case, the Court first turns to the second prong of the qualified immunity analysis: whether Officer Johnson's use of force in arresting Plaintiff, even if excessive, violated clearly established constitutional rights of which a reasonable officer should have known.

In *Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010), the Court of Appeals addressed for the first time the question of whether the use of a Taser to effect an arrest constituted excessive force. There, the court noted that "[T]asers like the X26 constitute an 'intermediate or medium, though not insignificant, quantum of force.'" *Id.* at 826 (quoting *Sanders v. City of Fresno*, 551 F. Supp. 2d 1149, 1168 (E.D. Cal. 2008)). The court concluded that although the intermediate level of force used by the officer was excessive under the facts of the case, the officer was entitled to qualified immunity because the law regarding the use of Tasers and excessive force was not clearly established at the time of the incident. *Id.* at 832-33.

As *Bryan* noted, it was the first Ninth Circuit decision to establish the law regarding the relationship between use of Tasers and excessive force. *See Bryan*, 630 F.3d at 833; *Johnson v. Arizona*, 2011 WL 2037682, at *2 (D. Ariz. May 24, 2011) ("[T]he law on the use of tasers was unsettled even . . . in 2010."). Plaintiff's conduct in this case occurred on June 10, 2010, before the final opinion in *Bryan* was filed.[3] Consequently, the Court must follow *Bryan*, which noted that a reasonable officer "could have made a reasonable mistake of law regarding the constitutionality of the [T]aser use in the circumstances." 630 F.3d at 833. Because the law regarding Tasers was not clearly settled on June 10, 2010, a reasonable officer could have made a reasonable mistake of law regarding the constitutionality of Officer Johnson's Taser use. Accordingly, Officer Johnson is entitled to qualified immunity and thus to judgment as a matter of law on this claim.

### 3.    Chief Dorn

Plaintiff claims against Gilbert Police Chief Timothy Dorn under section 1983 for violations of his constitutional rights stemming from his arrest. (Doc. 1-1 at 7). Chief Dorn was not at the scene of Plaintiff's arrest, but Plaintiff believes Dorn is responsible in his supervisory capacity for all of the Gilbert Police Department. *See* (Doc. 30-1 at 88). "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). In the absence of any allegations connecting Chief Dorn to the actions of Officers Fisher and Johnson, Plaintiff fails to state a cognizable claim against Chief Dorn and Chief Dorn is entitled to judgment as a matter of law.

---

[3] Although *Bryan* was filed on November 30, 2010, 630 F.3d at 805, an earlier version of the opinion had been filed on December 28, 2009. *See Bryan v. McPherson*, 590 F.3d 767 (9th Cir. 2009). This opinion had been withdrawn on June 3, 2010, however, meaning that no Ninth Circuit case addressed the use of Tasers at the time of the events in the present case.

### 4.   Town of Gilbert

Plaintiff also claims against the Town of Gilbert for section 1983 liability under a *Monell* failure-to-train theory. (Doc. 1-1 at 7). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." "That a particular officer may be unsatisfactorily trained" or that the training program has "occasionally been negligently administered" does not give rise to liability. *Id.* at 390-91. Rather, "deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 410 (1997). Moreover, "the identified deficiency in a city's training program must be closely related to the ultimate injury." *Canton*, 489 U.S. at 391.

Plaintiff has not offered any evidence supporting a section 1983 claim against the Town of Gilbert for failure to train its officers. Instead, the only relevant evidence shows that Officer Johnson had undergone extensive training, including specific Taser training. (Doc. 30-2 at 56-66). In the absence of a dispute of material fact, the Town of Gilbert is entitled to judgment as a matter of law on this claim.[4]

### C.   State Law Claims

Plaintiff also claims against Officer Johnson, Chief Dorn, and "other unnamed Gilbert police officers" for assault and battery. (Doc. 1-1 at 7). Defendants are not liable for assault or battery if Officer Johnson was justified in using force to arrest Plaintiff. A.R.S. § 13-413. A person is justified in using physical force to make an arrest if: (1) a reasonable person would believe "such force is immediately necessary to effect the arrest;" (2) "[s]uch person makes known the purpose of the arrest . . . or believes that it is

---

[4] Plaintiff also named the Town of Gilbert on a direct liability theory, apparently on a theory of respondeat superior. This claim fails. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978).

otherwise known or cannot reasonably be made known to the person to be arrested or detailed;" and (3) "[a] reasonable person would believe the arrest or detention to be lawful." A.R.S. § 13-409.

Defendants have established that Officer Johnson was justified in using force to arrest Plaintiff. Plaintiff knew the purpose of the arrest because, as he admits, he was turning himself into police. *See* (Doc. 30-1 at 87). Moreover, the undisputed evidence shows a reasonable person would believe the arrest to be lawful because Plaintiff had been previously involved in a domestic violence altercation and was known to the police to be suicidal. Finally, Defendants offer expert testimony that a reasonable police officer would have believed that using a Taser against Plaintiff was immediately necessary to arrest him. *See* (Doc. 30-2 at 37). Plaintiff does not dispute this testimony. Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's claims against Officer Johnson for assault and battery.

Officer Johnson was the only officer to use a Taser on Plaintiff. Therefore, Defendants are also entitled to judgment as a matter of law on Plaintiff's claims against Chief Dorn and the "other unnamed Gilbert police officers" for assault and battery.

**IV.   Conclusion**

For the foregoing reasons,

/
/
/
/
/
/
/
/
/
/

1    **IT IS ORDERED** denying Defendants' Motion for Summary Disposition of their

2    Motion for Summary Judgment (Doc. 31).

3    **IT IS FURTHER ORDERED** granting Defendants' Motion for Summary

4    Judgment (Doc. 29).

5    **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment

6    for Defendants and terminate this case.

7    Dated this 19th day of May, 2014.

8

9

10   _____

11                    James A. Teilborg
                Senior United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28